which obligate the Government to an expenditure of funds....

Similarly, 41 C.F.R. § 1.209 (1983) defines "procurement" as

the acquisition ... from non-Federal sources, of personal property and non-personal services (including construction) by such means as purchasing, renting, leasing (including real property), contracting or bartering, but not by seizure, condemnation, donation, or requisition.

Here there was no "buyer" or "seller" and no obligation on the part of the Government to expend funds. The Claims Court noted that "a cash 'payment' is not the applicable test" of whether a contract comes within the ambit of the CDA. *See Coffey v. United States On Behalf Of The Commodity Credit Corp.*, 626 F.Supp. 1246, 1250 (D.Kan.1986). We are persuaded, however, that the transaction here was closer to being donative in nature than it was to the contracts for procurement of property or services which Congress contemplated including within the scope of the Contract Disputes Act.

We are also not convinced that the transaction was a "barter" contract as found by the Claims Court to support its holding that the CDA was applicable. The September 23, 1983 document merely conditioned acceptance of the LAV virus samples on a promise to refrain from sharing them without permission from Pasteur. Neither that promise nor the Government's implied promise to share the results of future experiments with Pasteur can be considered "specific property susceptible of valuation," as would be required for barter. Black's Law Dictionary 1200 (5th ed. 1979).

Finally, application of complex, burdensome, and inevitably time-consuming procurement regulations to the type of scientific collaboration here involved would "not do justice to the realities of the situation." *Texas State Comm'n For The Blind*, 796 F.2d at 406. The exchange of information and perishable biological products among scientists engaged in collaborative research relating to deadly diseases such as AIDS should not be required to await compliance with procurement regulations such as those requiring a documented determination by a contracting officer that the contractor (here, Pasteur) is "responsible," 41 C.F.R. §§ 1–1.12, 3–1.12 (1983), or a written justification for contracting on a noncompetitive basis, 41 C.F.R. § 3–3.5301 (1983). Moreover, the numerous form clauses required by federal procurement regulations would have no applicability to this type of collaborative research effort. *See, e.g.*, 41 C.F.R. §§ 1–1.318–7, 1–7 (1983). Confirmatory of this is the fact that HHS itself has used a form similar to Pasteur's September 23, 1983 agreement when sending cell lines to other laboratories.

For the foregoing reasons, we are persuaded that the primary function of the pleaded contracts was facilitation of the transfer of research materials among scientists engaged in a collaborative research effort, not procurement of property or services, and that they, therefore, do not fit within the scope of the Contract Disputes Act. Accordingly, we reverse the judgment of the Claims Court and remand the case for consideration of whether there is a valid and enforceable contract, and, if so, whether it has been breached.

REVERSED and REMANDED.

**VERDEGAAL BROTHERS, INC.,
William Verdegaal, George
Verdegaal, Appellees,**

v.

**UNION OIL COMPANY OF CALIFORNIA, Brea Agricultural Services,
Inc., Appellants.**

**Appeal No. 86–1258.**

United States Court of Appeals,
Federal Circuit.

March 12, 1987.

See also, Fed.Cir., 750 F.2d 947.

Andrew J. Belansky, Christie, Parker & Hale, Pasadena, Cal., argued for appel-

lants. With him on the brief was David A. Dillard.

John P. Sutton, Limbach, Limbach & Sutton, San Francisco, Cal., argued for appellees. With him on the brief was Michael E. Dergosits.

Before MARKEY, Chief Judge, and DAVIS and NIES, Circuit Judges.

NIES, Circuit Judge.

Union Oil Company of California and Brea Agricultural Services, Inc. (collectively Union Oil) appeal from a judgment of the United States District Court for the Eastern District of California, No. CV–F–83–68 REC, entered on a jury verdict which declared U.S. Patent No. 4,310,343 ('343), owned by Verdegaal Brothers, Inc., "valid" and claims 1, 2, and 4 thereof infringed by Union Oil. Union Oil's motion for judgment notwithstanding the verdict (JNOV) was denied. We reverse.

## I

### BACKGROUND

#### The General Technology

The patent in suit relates to a process for making certain known urea-sulfuric acid liquid fertilizer products. These products are made by reacting water, urea (a nitrogen-containing chemical), and sulfuric acid (a sulfur-containing chemical) in particular proportions. The nomenclature commonly used by the fertilizer industry refers to these fertilizer products numerically according to the percentages by weight of four fertilizer constituents in the following order: nitrogen, phosphorous, potassium, and sulfur. Thus, for example, a fertilizer containing 28% nitrogen, no phosphorous or potassium, and 9% sulfur is expressed numerically as 28–0–0–9.

#### The Process of the '343 Patent

The process disclosed in the '343 patent involves the chemical reaction between urea and sulfuric acid, which is referred to as an exothermic reaction because it gives off heat. To prevent high temperature buildup, the reaction is conducted in the presence of a nonreactive, nutritive heat sink which will absorb the heat of reaction. Specifically, a previously-made batch of liquid fertilizer—known as a "heel"—can serve as the heat sink to which more reactants are added. Claims 1 and 2 are representative:

1. In a process for making a concentrated liquid fertilizer by reacting sulfuric acid and urea, to form an end product, the improvement comprising:

   a. providing a non-reactive, nutritive heat sink, capable of dissipating the heat of urea and sulfuric acid, in an amount at least 5% of the end product,

   b. adding water to the heat sink in an amount not greater than 15% of the end product,

   c. adding urea to the mixture in an amount of at least 50% of the total weight of the end product,

   d. adding concentrated sulfuric acid in an amount equal to at least 10% of the total weight of the end product.

2. The process of claim 1 wherein the heat sink is recycled liquid fertilizer.

#### Procedural History

Verdegaal brought suit against Union Oil in the United States District Court for the Eastern District of California charging that certain processes employed by Union Oil for making liquid fertilizer products infringed all claims of its '343 patent. Union Oil defended on the grounds of non-infringement and patent invalidity under 35 U.S.C. §§ 102, 103. The action was tried before a jury which returned a verdict consisting of answers to five questions. Pertinent here are its answers that the '343 patent was "valid" over the prior art, and that certain of Union Oil's processes infringed claims 1, 2, and 4 of the patent. None were found to infringe claims 3 or 5. Based on the jury's verdict, the district court entered judgment in favor of Verdegaal.

Having unsuccessfully moved for a directed verdict under Fed.R.Civ.P. 50(a), Union Oil timely filed a motion under Rule 50(b) for JNOV seeking a judgment that the claims of the '343 patent were invalid

under sections 102 and 103. The district court denied the motion without opinion.

## II

### ISSUE PRESENTED

Did the district court err in denying Union Oil's motion for JNOV with respect to the validity of claims 1, 2, and 4 of the '343 patent?

## III

### *Standard of Review*

■ When considering a motion for JNOV a district court must: (1) consider all of the evidence; (2) in a light most favorable to the non-moving party; (3) drawing all reasonable inferences favorable to that party; (4) without determining credibility of the witnesses; and (5) without substituting its choice for that of the jury's in deciding between conflicting elements of the evidence. *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1512–13, 220 USPQ 929, 936 (Fed.Cir.), *cert. denied*, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984); *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1546, 220 USPQ 193, 197 (Fed.Cir.1983). A district court should grant a motion for JNOV only when it is convinced upon the record before the jury that reasonable persons could not have reached a verdict for the nonmoving party. *Railroad Dynamics*, 727 F.2d at 1513, 220 USPQ at 936; *Connell*, 722 F.2d at 1546, 220 USPQ at 197.

■ To reverse the district court's denial of the motion for JNOV, Union Oil must convince us that either the jury's factual findings are not supported by substantial evidence, or, if they are, that those findings cannot support the legal conclusions which necessarily were drawn by the jury in forming its verdict. *See Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893, 221 USPQ 669, 673 (Fed.Cir.), *cert. denied*, 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984); *Railroad Dynamics*, 727 F.2d at 1512, 220 USPQ at 936. Substantial evidence is more than just a mere

scintilla; it is such relevant evidence from the record taken as a whole as a reasonable mind might accept as adequate to support the finding under review. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); *Perkin-Elmer*, 732 F.2d at 893, 221 USPQ at 673; *SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 371 n. 10, 218 USPQ 678, 684 n. 10 (Fed.Cir.1983). A trial court's denial of a motion for JNOV must stand unless the evidence is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment could not reasonably return the jury's verdict. *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 758, 221 USPQ 473, 477 (Fed.Cir.1984).

■ Our precedent holds that the presumption of validity afforded a U.S. patent by 35 U.S.C. § 282 requires that the party challenging validity prove the facts establishing invalidity by clear and convincing evidence. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360, 220 USPQ 763, 770 (Fed.Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). Thus, the precise question to be resolved in this case is whether Union Oil's evidence is so clear and convincing that reasonable jurors could only conclude that the claims in issue were invalid. *See Perkin-Elmer*, 732 F.2d at 893, 221 USPQ at 673; *Railroad Dynamics*, 727 F.2d at 1511, 220 USPQ at 935.

### *Anticipation*

■ A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference. *See, e.g., Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 715, 223 USPQ 1264, 1270 (Fed.Cir.1984); *Connell*, 722 F.2d at 1548, 220 USPQ at 198; *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 771, 218 USPQ 781, 789 (Fed.Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984). Union Oil asserts that the subject claims of the '343 patent

are anticipated under 35 U.S.C. § 102(e) [1] by the teachings found in the original application for U.S. Patent No. 4,315,763 to Stoller, which the jury was instructed was prior art.

From the jury's verdict of patent validity, we must presume that the jury concluded that Union Oil failed to prove by clear and convincing evidence that claims 1, 2, and 4 were anticipated by the Stoller patent. *See Perkin-Elmer*, 732 F.2d at 893, 221 USPQ at 673; *Railroad Dynamics*, 727 F.2d at 1516, 220 USPQ at 939. Under the instructions of this case, this conclusion could have been reached only if the jury found that the Stoller patent did not disclose each and every element of the claimed inventions. Having reviewed the evidence, we conclude that substantial evidence does not support the jury's verdict, and, therefore, Union Oil's motion for JNOV on the grounds that the claims were anticipated should have been granted.

The Stoller patent discloses processes for making both urea-phosphoric acid and urea-sulfuric acid fertilizers. Example 8 of Stoller specifically details a process for making 30–0–0–10 urea-sulfuric acid products. There is no dispute that Example 8 meets elements b, c, and d of claim 1, specifically the steps of adding water in an amount not greater than 15% of the product, urea in an amount of at least 50% of the product, and concentrated sulfuric acid in an amount of at least 10% of the product. Verdegaal disputes that Stoller teaches element a, the step of claim 1 of "providing a non-reactive, nutritive heat sink." As set forth in claim 2, the heat sink is recycled fertilizer.[2]

The Stoller specification, beginning at column 7, line 30, discloses:

Once a batch of liquid product has been made, it can be used as a base for further manufacture. This is done by placing the liquid in a stirred vessel of appropriate size, adding urea in sufficient quantity to double the size of the finished batch, adding any water required for the formulation, and slowly adding the sulfuric acid while stirring. Leaving a heel of liquid in the vessel permits further manufacture to be conducted in a stirred fluid mass.

This portion of the Stoller specification explicitly teaches that urea and sulfuric acid can be added to recycled fertilizer, i.e., a heel or base of previously-made product. Dr. Young, Union Oil's expert, so testified. Verdegaal presented no evidence to the contrary.

Verdegaal first argues that Stoller does not anticipate because in Stoller's method sulfuric acid is added *slowly*, whereas the claimed process allows for rapid addition. However, there is no limitation in the subject claims with respect to the rate at which sulfuric acid is added, and, therefore, it is inappropriate for Verdegaal to rely on that distinction. *See SSIH*, 718 F.2d at 378, 218 USPQ at 689. It must be assumed that slow addition would not change the claimed process in any respect including the function of the recycled material as a heat sink.

Verdegaal next argues that the testimony of Union Oil's experts with respect to what Stoller teaches could well have been discounted by the jury for bias. Discarding that testimony does not eliminate the reference itself as evidence or its uncontradicted disclosure that a base of recycled fertilizer in a process may be used to make more of the product.

Verdegaal raises several variations of an argument, all of which focus on the

---

1. Section 102(e) provides:

A person shall be entitled to a patent unless—

. . . .

(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or on an international application by another who has fulfilled the requirements of paragraphs (1), (2), and (4) of section 371(c) of this title before the invention thereof by the applicant for patent. . . .

2. Claim 4 is written in terms of approximate percentages of all reactants by weight of the end product. No argument is made that the process of claim 4 would result in a fertilizer product any different from that disclosed by Example 8 of Stoller.

failure of Stoller to explicitly identify the heel in his process as a "heat sink." In essence, Verdegaal maintains that because Stoller did not recognize the "inventive concept" that the heel functioned as a heat sink, Stoller's process cannot anticipate. This argument is wrong as a matter of fact and law. Verdegaal's own expert, Dr. Bahme, admitted that Stoller discussed the problem of high temperature caused by the exothermic reaction, and that the heel could function as a heat sink.[3] In any event, Union Oil's burden of proof was limited to establishing that Stoller disclosed the same process. It did not have the additional burden of proving that Stoller recognized the heat sink capabilities of using a heel. Even assuming Stoller did not recognize that the heel of his process functioned as a heat sink, that property was inherently possessed by the heel in his disclosed process, and, thus, his process anticipates the claimed invention. *See In re Oelrich,* 666 F.2d 578, 581, 212 USPQ 323, 326 (CCPA 1981); *In re Swinehart,* 439 F.2d 210, 212-13, 169 USPQ 226, 229 (CCPA 1971). The pertinent issues are whether Stoller discloses the process of adding urea and sulfuric acid to a previously-made batch of product, and whether that base would in fact act as a heat sink. On the entirety of the record, these issues could only be resolved in the affirmative.

On appeal Verdegaal improperly attempts to attack the status of the Stoller patent as prior art, stating in its brief:

Verdegaal also introduced evidence at trial that the Stoller patent is not prior art under 35 U.S.C. §§ 102(e)/103. Professor Chisum testified that the Stoller patent, in his opinion, was not prior art.... This conclusion finds support in

*In re Wertheim,* 646 F.2d 527 (CCPA 1981), and 1 Chisum on Patents § 3.07[3].

Appellee Brief at 27 (record cite omitted). Seldom have we encountered such blatant distortion of the record. A question about the status of the Stoller disclosure as prior art did arise at trial. Union Oil asserted that, even though the Stoller patent issued after the '343 patent, Stoller was prior art under section 102(e) as of its filing date which was well before the filing date of Verdegaal's application. Professor Chisum never testified that the Stoller patent was *not* prior art, but rather, stated that *he did not know* whether it was prior art. An excerpt from the pertinent testimony leaves no doubt on this point:

Q. (Mr. Sutton): And do you know whether the Stoller patent is prior art to the application of the Verdegaal patent?

A. (Prof. Chisum): I don't know that it is, no.

We find it even more incredible that Verdegaal would attempt to raise an issue with respect to the status of the Stoller patent given that the case was submitted to the jury with the instruction that the original Stoller patent application was prior art.[4] Verdegaal made no objection to that instruction below, and in its appeal briefs, the instruction is cavalierly ignored.

In sum, Verdegaal is precluded from arguing that the Stoller patent should not be considered prior art. *See* Fed.R.Civ.P. 51; *Weinar v. Rollform Inc.,* 744 F.2d 797, 808, 223 USPQ 369, 375 (Fed.Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1844, 85 L.Ed.2d 143 (1985); *Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.,* 739 F.2d 604, 615, 222 USPQ 654, 662 (Fed. Cir.), *cert. denied,* 469 U.S. 1038, 105 S.Ct. 516, 83 L.Ed.2d 405 (1984).[5]

---

**3.** There is no dispute that the percentage of heel described in Stoller meets the percentage of heat sink required by the claims.

**4.** The jury instruction read:

Stoller filed two patent applications—an original application on October 30th, 1978, and a second on February 7th, 1980. Under the patent laws, the claims of the 343 patent are invalid if you find that the original application (Exhibit BL) anticipates the process claimed in the 343 patent.

**5.** Union Oil also argues that Verdegaal's counsel misled the jury by its closing rebuttal argument:

[B]ut I think it's important to keep in mind that [Stoller] couldn't have been a prior patent because it issued a month after the Verdegaal patent had issued.

We disapprove of Verdegaal's tactic which would form the basis for a grant of a motion for a new trial but for our conclusion that outright reversal of the ruling on the motion for JNOV is in order.

After considering the record taken as a whole, we are convinced that Union Oil established anticipation of claims 1, 2, and 4 by clear and convincing evidence and that no reasonable juror could find otherwise. Consequently, the jury's verdict on validity is unsupported by substantial evidence and cannot stand. Thus, the district court's denial of Union Oil's motion for JNOV must be reversed.

### Conclusion

Because the issues discussed above are dispositive of this case, we do not find it necessary to reach the other issues raised by Union Oil.[6] In accordance with this opinion, we reverse the portion of the judgment entered on the jury verdict upholding claims 1, 2, and 4 of the '343 patent as valid under section 102(e) and infringed.

REVERSED.

---

**6.** It should not be inferred that all of these issues were properly before us. Union Oil appears to assume that on appeal it may dispute the resolution of any *issue* which is denominated an "issue of law" even though it was not raised in its motion for JNOV. This is incorrect. *See Railroad Dynamics,* 727 F.2d at 1511, 220 USPQ at 934.