**ELECTRO MEDICAL SYSTEMS, S.A., Plaintiff–Appellant,**

**v.**

**COOPER LIFE SCIENCES, INC., Dentsply International Inc., and Dentsply Research & Development Corp., Defendants–Appellees.**

No. 94–1003.

United States Court of Appeals, Federal Circuit.

Sept. 12, 1994.

Preston Moore, Attorney, Morrison & Foerster, San Francisco, CA, argued, for plaintiff-appellant. With him on the brief were Grant L. Kim and James R. Shay.

Dale M. Heist, Attorney, Woodcock, Washburn, Kurtz, Mackiewicz and Norris, Philadelphia, PA, argued, for defendants-appellees. With him on the brief were Albert W. Preston, Jr., John P. Donohue, Jr., Thomas R. Boland and Ellen A. Efros. Of counsel was Edward J. Hanson, Jr.

Before MAYER, LOURIE, and RADER, Circuit Judges.

LOURIE, Circuit Judge.

Electro Medical Systems, S.A. ("EMS") appeals from a judgment of the United

States District Court for the Eastern District of New York holding U.S. Patents 3,882,638, 3,972,123, and 4,412,402 infringed and not invalid, and awarding increased damages and attorney fees based on its finding of willful infringement. *Electro Medical Sys., S.A. v. Cooper Life Sciences, Inc.*, Civ. Action No. CV–86–0607 (E.D.N.Y. Aug. 25, 1993) (final judgment order).[1] We affirm-in-part and reverse-in-part.

## BACKGROUND

The three patents in suit[2] relate to equipment for delivering gas, abrasive, and liquid to the surface of a tooth in order to remove plaque and stain without damaging the tooth surface. The devices claimed in the '638 and '123 patents direct a stream of abrasive-laden gas to a tooth surface and a stream of liquid to the tooth surface adjacent to the target area of the abrasive-laden gas stream. After the abrasive particles impact the tooth, they are taken up by the liquid and then removed in suspension form through the use of a common suction tube. The '402 patent relates to an improved device using abrasive particles that are water soluble, wherein the device delivers air, abrasive, and liquid to a tooth surface as a continuous liquid "curtain" surrounding a pressurized jet of abrasive-laden gas.

Appellant EMS is a Swiss manufacturer of dental equipment, distributing products in over fifty different countries. In 1984, EMS filed suit against appellees Cooper Life Sciences Incorporated, Dentsply International Incorporated, and Dentsply Research & Development Corporation (collectively "Dentsply") in the Northern District of Illinois, seeking a declaratory judgment of invalidity and non-infringement of patents relating to air abrasive equipment used to clean teeth, including those at issue here. The '638 and '123 patents are owned by Cooper and exclusively licensed to Dentsply. The '402 patent is owned by Dentsply.

Despite EMS's allegations that Dentsply had asserted foreign counterpart patents against EMS and its distributors and had threatened to sue potential United States distributors of EMS's products, Dentsply moved to dismiss for lack of a justiciable controversy. Dentsply contended that it did not intend to charge EMS with infringement of the U.S. patents and that EMS lacked the capacity and intent to sell its products in the United States. The Northern District of Illinois denied Dentsply's motion to dismiss.

In 1986, on motion of the defendants, the Illinois court transferred the claims against Cooper to the Eastern District of New York for reasons of convenience, and severed and stayed the claims against Dentsply because Dentsply had no "presence" in New York. Subsequently, Dentsply was allowed to join the New York action because it by then had acquired rights to Cooper's patent.

Dentsply then initiated an International Trade Commission (ITC) proceeding against EMS and others for alleged patent infringement. After discovery was nearly completed, Dentsply moved to dismiss its ITC claims against EMS, which the ITC did, with prejudice.

In November of 1987, Dentsply again moved to dismiss the district court action, claiming that there was no justiciable controversy. As part of its motion, Dentsply noted that

[at a status conference in September of 1987, the magistrate] strongly recommended that, if EMS truly were interested in a determination of the issues of patent validity and infringement, EMS undertake sufficient acts in the United States to create an actual controversy. [The magistrate] made clear his view that, absent at least one sale by EMS in the United States, the court would dismiss the in-

---

1. The final judgment order dated August 25, 1993 is based on a memorandum and order dated August 26, 1992 (*"Electro* I"), a memorandum and order on reconsideration dated May 13, 1993 (*"Electro* II"), and a memorandum and order on reconsideration dated August 6, 1993 (*"Electro* III").

2. The '638 and '123 patents, both entitled "Air-Abrasive Prophylaxis Equipment," issued in 1975 and 1976, respectively, naming Dr. Robert Black as inventor. The '402 patent, entitled "Equipment and Method for Delivering an Abrasive-Laden Gas Stream," issued in 1983, naming Ben J. Gallant as inventor.

fringement issue for lack of subject matter jurisdiction. Obviously, the same conclusion applies to the issue of patent validity. Mem. of Points and Auth. of Def. in Support of Motion to Dismiss. The court again denied Dentsply's motion.

In 1990, six years after commencement of this litigation, after the completion of discovery and three months before the scheduled trial, Dentsply threatened to bring a third motion to dismiss for lack of a justiciable controversy. In response, EMS sold six products. Dentsply then amended its answer to add a counterclaim for patent infringement, alleging that EMS was a willful infringer. EMS stipulated in a pretrial order that it "[would] not waive any claim of attorney/client privilege in defense of any allegation of willful infringement or demand for counsel fees." Invoking the privilege at trial, EMS declined to disclose the substance of any advice it received from its counsel prior to the United States sales.

After a full bench trial, the court issued a decision finding all of the claims in suit to be infringed and not invalid, and awarding $8,752.00 in compensatory damages based on EMS's six sales. Drawing an adverse inference from EMS's refusal to produce an opinion of counsel, the court found that EMS was a willful infringer, and awarded double damages and $942,528.90 in attorney fees. The award was affirmed on reconsideration. EMS appeals from the judgment of validity and infringement and from the award of increased damages and attorney fees.

## DISCUSSION

1. *Validity*

 At trial, EMS challenged the validity of claim 20 of the '402 patent on the basis that it was anticipated by U.S. Patent 2,405,-854 to Ruemelin under 35 U.S.C. § 102(b). Anticipation must be proved by clear and convincing evidence. *Verdegaal Bros., Inc. v. Union Oil Co.*, 814 F.2d 628, 632, 2 USPQ2d 1051, 1053 (Fed.Cir.), *cert. denied*, 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987). Anticipation under 35 U.S.C. § 102(b) requires the presence in a single prior art disclosure of each and every ele-

ment of a claimed invention, *Lewmar Marine, Inc. v. Barient, Inc.*, 827 F.2d 744, 747, 3 USPQ2d 1766, 1767 (Fed.Cir.1987), *cert. denied*, 484 U.S. 1007, 108 S.Ct. 702, 98 L.Ed.2d 653 (1988), and is a question of fact subject to review under the clearly erroneous standard, *Ralston Purina Co. v. Far-Mar-Co., Inc.*, 772 F.2d 1570, 1574, 227 USPQ 177, 179 (Fed.Cir.1985).

 The court determined that EMS had failed to introduce clear and convincing evidence that the Ruemelin patent discloses every element of claim 20. Specifically, the court found that the Ruemelin patent did not disclose a substantially unpressurized flow of liquid or a continuous liquid curtain surrounding the pressurized jet of particle-laden gas. *Electro* I, slip op. at 55. EMS asserts that these features are "inherent" in the Ruemelin patent because, although Ruemelin discloses a blasting and spraying gun utilizing pressurized liquid, the Ruemelin device "could be set to any water pressures."

We do not agree that the subject matter of the claim was anticipated. "The mere fact that a certain thing *may result* from a given set of circumstances is insufficient to prove anticipation." *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268–69, 20 USPQ2d 1746, 1749 (Fed.Cir.1991) (quoting *In re Oelrich*, 666 F.2d 578, 581, 212 USPQ 323, 326 (CCPA1981)) (emphasis added). EMS was required to prove that an unpressurized flow is necessarily present in the Ruemelin disclosure, and that it would be so recognized by persons of ordinary skill. *Id.* at 1268, 20 USPQ2d at 1749. EMS did not discharge its burden; thus, the district court properly concluded that EMS failed to prove invalidity of claim 20.

 EMS also challenged the validity of claims 4, 12, 16, and 21 of the '402 patent on the basis that the subject matter of the claims would have been obvious under 35 U.S.C. § 103. Obviousness is a question of law, based on underlying factual inquiries, which are subject to the clearly erroneous standard of review. *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1568–69, 1 USPQ2d 1593, 1597–98 (Fed.Cir.), *cert. denied*, 481 U.S. 1052, 107 S.Ct. 2187, 95

L.Ed.2d 843 (1987). In a thorough opinion, the magistrate undertook an analysis of the obviousness question, carefully considering the scope and content of the prior art, the differences between the claims and the prior art, the level of ordinary skill in the art, and objective evidence of non-obviousness, including long-felt but unsatisfied need, failure of others, commercial success, copying, and tribute by others. *See Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693–94, 15 L.Ed.2d 545 (1966). The court concluded that EMS had not met its burden of demonstrating by clear and convincing evidence that the claimed subject matter would have been obvious to one of ordinary skill in the art.

EMS does not challenge the court's underlying findings here; rather, it merely asserts that "if [the claims] were construed for validity as the district court construed [them] for infringement[, they would be] invalid under 35 U.S.C. § 103." We have considered this assertion and find it unpersuasive. EMS has not convinced us of reversible error in the court's determination that the '402 patent is not invalid.

### 2. *Infringement*

The court found that the accused EMS device infringed claims 2 and 3 of the '638 patent, claim 4 of the '123 patent, and claims 4, 12, 16, 20, and 21 of the '402 patent. EMS asserts that the judgment of infringement with respect to the '638 and '123 patents was based on erroneous claim interpretation. With respect to the '402 patent, EMS asserts that the judgment of infringement was based on erroneous claim interpretation and clearly erroneous fact finding.

A determination of patent infringement requires a two-step analysis. First, a claim must be interpreted to determine its scope and meaning; second, it must be determined whether an accused device is within the scope of the properly interpreted claim. *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1578, 6 USPQ2d 1557, 1559 (Fed.Cir.1988). The first step is an issue of law, reviewed *de novo*, and the second is a question of fact, reviewed for clear error. *Minnesota Mining & Mfg., Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1570, 24 USPQ2d 1321, 1330 (Fed.Cir.1992). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

Claim 2 of the '638 patent is directed to a system for handling and feeding abrasive particles, and recites a "first nozzle means for delivering the abrasive-laden stream to a point of use" and a *"second nozzle means* in predetermined relation to the first nozzle means *for delivering a stream of liquid adjacent said point of use,"* the first and second nozzle means being integrated in a common handpiece.[3] Claim 4 of the '123 patent recites a dental handpiece for use in the cleaning of teeth, and includes "two fluid discharge orifices ... being positioned and oriented to discharge streams of the abrasive-laden gas and liquid in the same general direction transversely of the hand grip, *with the streams of abrasive-laden gas and liquid converging toward each other."*[4]

---

3. In its entirety, with relevant portions of its parent claim added, claim 2 reads:
 [A system for handling and feeding abrasive particles comprising means for mixing abrasive particles with a gaseous stream, first nozzle means for delivering the abrasive laden stream to a point of use, controllable supply means for starting and stopping the abrasive laden stream, second nozzle means in predetermined relation to the first nozzle means for delivering a stream of liquid adjacent said point of use, controllable supply means for starting and stopping the stream of liquid and control means for the supply means including means providing for substantially concurrently

starting and stopping of the discharge of the gaseous and liquid streams from the nozzle means,] in which the first and second nozzle means are integrated in a common handpiece.
 Claim 3 contains the following relevant language:
 second nozzle means for receiving heated water from the water heater and for delivering a stream of heated water substantially to said point of use....

4. In its entirety, claim 4 reads:
 A dental handpiece for use in the cleaning of teeth, the handpiece comprising an elongated

EMS argues that the "second nozzle means" of the '638 claims must deliver a stream of liquid to the tooth surface as a stream *separate and independent* from the abrasive-laden stream delivered by the first nozzle means, which is different from the accused device. Furthermore, EMS argues that the '123 claim only covers a device in which the streams of liquid and abrasive-laden gas converge *at or near the surface of the tooth,* unlike the accused device. EMS relies upon the specifications, which it asserts disclose devices consistent with its asserted claim interpretation. Also, EMS points to the prosecution history of the '638 patent, in which the patentee emphasized that the "nozzle means provid[es] for delivery of the stream of liquid to a point adjacent to the point to which the abrasive is directed," and to the prosecution history of the '123 patent, in which the "convergence" of the streams was emphasized.

Because the EMS device delivers a combined stream of gas, particles, and liquid to the tooth surface, EMS asserts that the device does not infringe the '638 patent as EMS interprets the claims. Furthermore, EMS contends that the accused device delivers streams that converge at the edge of a first nozzle, immediately after discharge and before contact with the tooth's surface, and thus it does not infringe the '123 patent. Dentsply contends that the court properly interpreted the claims and properly found infringement.

■■■■ Claims speak to those skilled in the art. *See Specialty Composites v. Cabot Corp.,* 845 F.2d 981, 986, 6 USPQ2d 1601, 1604 (Fed.Cir.1988). When the meaning of words in a claim is in dispute, the specification and prosecution history can provide relevant information about the scope and meaning of the claim. *Id.* at 986, 6 USPQ2d at 1604. However, claims are not to be inter-preted by adding limitations appearing only in the specification. *See Intervet Am. v. Kee-Vet Lab.,* 887 F.2d 1050, 1053, 12 USPQ2d 1474, 1476 (Fed.Cir.1989) ("No matter how great the temptations of fairness or policy making, courts do not rework claims. They only interpret them.") (quoting with approval *Autogiro Co. of Am. v. United States,* 181 Ct.Cl. 55, 384 F.2d 391, 395–96, 155 USPQ 697, 701 (1967)). Thus, although the specifications may well indicate that certain embodiments are preferred, particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments. *See Specialty,* 845 F.2d at 987, 6 USPQ2d at 1605 ("Where a specification does not *require* a limitation, that limitation should not be read from the specification into the claims.").

Upon review of the two specifications and prosecution histories, we conclude that the court did not err when it determined that the term "adjacent" does not necessarily mean "separate and independent." The '638 claim was properly interpreted to cover a device that delivers a combined air, abrasive, and liquid stream surrounded by a liquid stream such that the abrasive is delivered to a target area on the tooth surface and liquid is delivered adjacent to that area. Similarly, the court properly concluded that the term "converge" does not necessarily mean "converge at the surface of the tooth," and that the claims were properly interpreted to cover a device having streams converging before they reach the tooth surface. The prosecution history does not indicate otherwise. We thus see no error in the court's interpretation of the claims of the '638 and '123 patents and hence its infringement determination.

■■■■ Claims 4 and 20 are representative of the claims at issue in the '402 patent. Claim 4 recites a method for effecting abrasion using "water soluble" particles.[5] Claim

---

hand grip having two separate fluid passages extended longitudinally therethrough providing respectively for supply of abrasive laden gas and of a liquid, the hand grip further having a head at one end thereof with two fluid discharge orifices and with two passages respectively and separately connecting said longitudinal passages with the fluid discharge orifices, the orifices being positioned and ori-ented to discharge streams of the abrasive laden gas and liquid in the same general direction transversely of the hand grip, with the streams of abrasive laden gas and liquid converging toward each other.

**5.** With relevant portions of its parent claim added, claim 4 reads:

20 recites a device for effecting abrasion including "means for releasing a substantially unpressurized flow of [ ] liquid as a *continuous liquid curtain* surrounding [a] pressurized jet of particle-laden gas."[6] EMS argues that neither the "water soluble" nor the "continuous liquid curtain" limitation is satisfied by the accused device.

EMS contends that the meaning of the term "water soluble," as used in the patent, requires that under actual operating conditions the particles dissolve immediately upon contact with the water before hitting the tooth. EMS further contends that the "means for releasing liquid as a liquid curtain" must create a "solid" curtain of liquid at the point the water is released. EMS maintains that the court clearly erred in determining that the abrasive particles used by the EMS device were soluble within the meaning of the claims because they include an insoluble coating that "cracks" upon impact with the tooth so that the particles will dissolve only at the tooth's surface. EMS further maintains that the court clearly erred in determining that the EMS device includes a "means for releasing liquid as a liquid curtain" as that phrase is properly interpreted.

Upon review of the '402 specification and prosecution history, we conclude that the court properly construed the claims as not requiring that the particles used be soluble within the area between the nozzle and the tooth and as not requiring that the curtain of water be a "solid" curtain. *See Specialty,* 845 F.2d at 981, 6 USPQ2d at 1601; *Intervet,* 887 F.2d at 1050, 12 USPQ2d at 1474.

The court's findings of infringement of the '402 patent were based primarily on expert testimony and experiments conducted during the trial. As the court noted, EMS "performed *no* tests[, with the exception of an unreliable courtroom demonstration,] to rebut the findings made by Dentsply's expert. [EMS's] lack of 'hard' evidence ... and the plethora of opinion testimony unsupported by any backup evidence, [were] largely unpersuasive." *Electro* I, slip op. at 18–19. Based on the expert testimony and experiments, the court found that the particles used in the EMS device were indeed soluble within the meaning of the claims and that "[t]he inner combined spray emitted from the EMS products' nozzle is surrounded by a water curtain." We conclude that EMS has not shown the court's claim interpretation to be in error or its infringement findings to be clearly erroneous.

### 3. *Increased Damages and Attorney Fees*

After determining that the accused device infringed Dentsply's patents, the court assessed actual damages of $8,752.00 resulting from the six sales in 1990. The court drew an adverse inference from EMS's refusal to produce an opinion of counsel, stating

> Based upon EMS' refusal to disclose the substance of the opinion of its counsel, despite Dentsply's charge of willful infringement, as well as EMS' failure to enter the U.S. market for six years after obtaining counsel, the court concludes that it must draw an adverse inference that the opinion was unfavorable. EMS eventually proceeded with knowledge of the unfavorable view of counsel, and thus engaged in willful infringement of the patents.

*Electro* I, slip op. at 79. The court thus held that the infringement was willful, awarding increased damages and $942,528.90 in attorney fees. On reconsideration of the award, the court affirmed. *Electro* II, slip op. at 20. After the original and reconsideration orders

---

[A method for effecting abrasion comprising delivering from a nozzle orifice a *pressurized* jet of particle-laden gas, with resultant development of an ambient induction zone, releasing a substantially unpressurized flow of the liquid into an annual space surrounding the ambient induction zone and thereby establish a combined stream of gas, particles and liquid, and directing the combined stream against the surface to be abraded,] in which the particles are water soluble and the liquid is water.

**6.** Claim 20 reads:

> Equipment for effecting abrasion comprising: nozzle means for delivering a pressurized jet of gas laden with particles, with resultant development of an ambient induction zone, and means for delivering a liquid into said induction zone comprising means for releasing a *substantially unpressurized flow of the liquid as a continuous liquid curtain surrounding the pressurized jet of particle-laden gas.*

were issued, EMS offered to waive the attorney-client privilege and disclose the advice of its counsel. The district court declined EMS's offer as untimely.

EMS argues that the award of increased damages and attorney fees must be reversed because it is based on a clearly erroneous finding of willfulness. Dentsply asserts that the court properly awarded such damages and argues that "EMS could have avoided willfulness and ... attorney fees ... had they shown conviction in their case by either selling the product or by waiving privilege." We agree with EMS.

■ In appropriate cases, a patentee may recover from an infringer increased damages and attorney fees. 35 U.S.C. §§ 284, 285 (1988); *General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 654, 103 S.Ct. 2058, 2061–62, 76 L.Ed.2d 211 (1983). The decision whether to award increased damages or attorney fees is reviewed for an abuse of discretion. *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.,* 926 F.2d 1161, 1165 n. 2, 17 USPQ2d 1922, 1925 n. 2 (Fed.Cir.1991). Such awards have been made when the infringement was found to be willful. *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 826, 23 USPQ2d 1426, 1435 (Fed.Cir.1992).

■ Willfulness is shown when, upon consideration of the totality of the circumstances, clear and convincing evidence establishes that the infringer acted in disregard of the patent, that the infringer had no reasonable basis for believing it had a right to engage in the infringing acts. *See American Medical Sys. Inc. v. Medical Eng'g Corp.,* 6 F.3d 1523, 1530, 28 USPQ2d 1321, 1325 (Fed. Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1647, 128 L.Ed.2d 366 (1994). The existence of willful infringement is a finding of fact, which will not be disturbed on appeal unless it is clearly erroneous. *Id.* at 1530, 28 USPQ2d at 1325.

■ The law imposes an affirmative duty of due care to avoid infringement of the known patent rights of others. *L.A. Gear Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1127, 25 USPQ2d 1913, 1920 (Fed.Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993). Usually, this duty includes seeking and obtaining competent legal advice before engaging in activity that may result in infringement. *Underwater Devices, Inc. v. Morrison–Knudsen Co.,* 717 F.2d 1380, 1389–90, 219 USPQ 569, 576 (Fed.Cir. 1983). Accordingly, we have held that when an infringer refuses to produce an exculpatory opinion of counsel in response to a charge of willful infringement, an inference may be drawn that either no opinion was obtained or, if an opinion was obtained, it was unfavorable. *See, e.g., Fromson v. Western Litho Plate & Supply Co.,* 853 F.2d 1568, 1572–73, 7 USPQ2d 1606, 1611 (Fed.Cir.1988); *Kloster Speedsteel AB v. Crucible Inc.,* 793 F.2d 1565, 1579–80, 230 USPQ 81, 91 (Fed.Cir. 1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987). However, there are no hard and fast rules in respect of willfulness. *Rolls–Royce Ltd. v. GTE Valeron Corp.,* 800 F.2d 1101, 1109, 231 USPQ 185, 191 (Fed.Cir.1986); *Studiengesellschaft Kohle, M.B.H. v. Dart Indus.,* 862 F.2d 1564, 1573, 9 USPQ2d 1273, 1282 (Fed.Cir.1988) ("The consequences of a finding of willful infringement being serious, such a finding ... is to be made only after due consideration of the totality of the circumstances."). An inference that an opinion was unfavorable does not foreclose consideration of other relevant factors. Possession of a favorable opinion of counsel is not essential to avoid a willfulness determination; it is only one factor to be considered, albeit an important one. *Kloster,* 793 F.2d at 1579, 230 USPQ at 91 (though it is an important consideration, the absence of an opinion of counsel alone does not mandate an ultimate finding of willfulness).

■ EMS had a right to assert the attorney-client privilege. *See Quantum Corp. v. Tandon Corp.,* 940 F.2d 642, 644 (Fed.Cir. 1991) (attorney-client privilege is a "basic, time-honored privilege [warranting] careful consideration."). As we previously have noted,

[a]n accused infringer ... should not, without the trial court's careful consideration, be forced to choose between waiving the privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of

liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found.

*Id.* (suggesting that court inspect *in camera* privileged communications to determine if separate trial on willfulness issue is appropriate).[7] Assertion of the privilege does not raise an irrebuttable presumption of willfulness. Such a rule would not accommodate consideration of other facts, nor would it respect the right of a party to assert the privilege.

 The district court here was free to draw an inference adverse to EMS when, asserting the attorney-client privilege, EMS refused to produce an opinion of counsel. However, the court erred because it failed to consider the evidence in its entirety and erroneously evaluated the significance of EMS's six-year delay in entering the market.

The district court reasoned that EMS's decision to wait six years before it sold the accused product supported the inference that EMS possessed an unfavorable opinion of counsel. This suggests that EMS was pursuing protracted litigation and running up large fees to the detriment of its opponents, while believing that it had a losing case and before it infringed. If that were true, such conduct could have been dealt with by sanctions for bad-faith litigation or even dismissal for lack of a case or controversy, but it would not have been willful infringement. There was no finding of misconduct in this case, nor did the district court choose to dismiss the suit. Even if it had an unfavorable opinion of counsel, we agree with EMS that under the circumstances, its decision to defer sale of the accused product was more consistent with satisfying its duty of due care to avoid or minimize infringement than with willfulness. EMS sought a judicial determination of the contested issues before selling the accused product. It was only in the face of three motions to dismiss, two denied and one threatened, and in light of the magistrate's statement that, "absent at least one sale by EMS in the United States, the court would dismiss the infringement issue for lack of subject matter jurisdiction," that EMS sold

six devices. The infringement therefore was *de minimis* and was accomplished only to avoid dismissal and ensure prompt adjudication, not as part of its business to generate income. EMS's conduct throughout the litigation was to seek resolution of the controversy. *See Minnesota Mining & Mfg., Co. v. Norton Co.,* 929 F.2d 670, 673, 18 USPQ2d 1302, 1305 (Fed.Cir.1991). This case does not involve a "wanton disregard of the patentee's patent rights." *See Read,* 970 F.2d at 826, 23 USPQ2d at 1435.

On reconsideration, the district court further stated that "EMS's failure to produce an exculpatory legal opinion gives rise to the inference that it proceeded with this lawsuit against the advice of counsel. It is on this basis that the findings of willfulness and 'an exceptional case' were made." *Electro* II, slip op. at 20. However, filing suit is not willful infringement. Moreover, EMS testified as to its good faith belief that the patents were either invalid or not infringed. Although we have affirmed the court's determinations of infringement and validity, it is clear to us that EMS had a basis for its arguments on the merits. Dentsply itself agreed at oral argument that "there were definitely arguments" with respect to the issues in this case. The questions were indeed close, and this was another relevant factor overlooked in the assessment of willfulness. *See Paper Converting Mach. Co. v. Magna–Graphics Corp.,* 745 F.2d 11, 20, 223 USPQ 591, 597–98. (Fed.Cir.1984) (willfulness finding is generally inappropriate when the infringer mounts a good faith and substantial challenge to the existence of infringement). The facts here do not constitute clear and convincing evidence of willfulness. Upon review of the evidence in its entirety, we are left with the definite and firm conviction that the court erred in finding willful infringement.

"The paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances." *Read,* 970 F.2d at 826, 23 USPQ2d at 1435. Absent willful infringement, there is no basis in this case for increased dam-

---

7. In the present case, no motion was made to sever liability from damages.

ages. The court expressly declined to find that EMS had engaged in misconduct or copying. *Electro* I, slip op. at 72–73, 79–80 n. 24. *See Read,* 970 F.2d at 826–27, 23 USPQ2d at 1435–36 (listing factors to be considered in determining whether to award increased damages). These factors, in addition to those discussed above with respect to willfulness, compel the conclusion that the award of increased damages was an abuse of discretion. *See Kloster,* 793 F.2d at 1580, 230 USPQ at 91 ("[i]f infringement [is] . . . innocent, increased damages are not awardable for infringement."). Likewise, the award of attorney fees, based on an erroneous finding of willfulness, cannot stand. *See Studiengesellschaft,* 862 F.2d at 1579, 9 USPQ2d at 1287 (where judge rejected master's willfulness finding, it was proper to reverse the award of increased damages and attorney fees).

## CONCLUSION

That part of the judgment holding U.S. Patents 3,882,638, 3,972,123, and 4,412,402 infringed and not invalid is affirmed. That part of the judgment awarding increased damages and attorney fees is reversed because the court's finding of willful infringement was clearly erroneous.

## COSTS

Each party shall bear its own costs.

**AFFIRMED–IN–PART** and **REVERSED–IN–PART.**